# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### November 3, 2021 Session

## STATE OF TENNESSEE v. COREY ALLEN HARRIS

**Appeal from the Circuit Court for Madison County**
No. 20-97    Donald H. Allen, Judge

_____

### No. W2021-00030-CCA-R3-CD
_____

The Defendant, Corey Allen Harris, was convicted after a jury trial of attempted second degree murder, aggravated assault, and employment of a firearm during the commission of a dangerous felony, and he received an effective eighteen-year sentence. The Defendant filed a motion for a new trial asserting that the evidence was insufficient and that the prosecutor's argument was so improper as to constitute plain error. On appeal, the Defendant renews the challenges to the sufficiency of the evidence and the prosecutor's closing argument, and he asks for relief based on the omission from the jury instructions of the statutory definition of attempt. Because the jury was not properly instructed on the elements of the offense of attempted second degree murder, we reverse the convictions for attempted second degree murder and employment of a firearm during the commission of attempted second degree murder, and we remand for further proceedings. The aggravated assault conviction is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part; Reversed in Part; Case Remanded**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which NORMA MCGEE OGLE and TIMOTHY L. EASTER, JJ., joined.

Jessica F. Butler (on appeal), Assistant Public Defender – Appellate Division; Jeremy Epperson, District Public Defender; and Gregory D. Gookin (at trial), Assistant District Public Defender, for the appellant, Corey Allen Harris.

Herbert H. Slatery III, Attorney General and Reporter; James E. Gaylord, Senior Assistant Attorney General; Jody S. Pickens, District Attorney General; and Bradley Champine, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL AND PROCEDURAL HISTORY

The Defendant went to the fast-food restaurant where the victim, Mr. Darvius Chatman, worked, and he fired two shots at the victim, striking him once in the back in a glancing blow. The victim and his wife, Ms. Brandy Chatman, identified the Defendant as the shooter, and the Defendant gave a statement acknowledging he had fired shots but denying he intended to hit the victim. The Defendant was charged with attempted first degree murder committed by taking the substantial step of shooting at the victim, aggravated assault by causing bodily injury through the use of a firearm, and employment of a firearm during the commission of attempted first degree murder. At trial, the Defendant essentially conceded the aggravated assault charge but argued that he was not attempting to harm the victim and that the shooting was in response to an assault the victim had committed on the victim's ex-girlfriend.

At trial, the victim testified that at the time of the shooting, he was married but that his wife was aware he was also in a relationship with Ms. Shanda Pirtle. The victim testified that he had ended his relationship with Ms. Pirtle approximately a week before the shooting and that Ms. Pirtle was unhappy and threatened him. Ms. Pirtle worked with the Defendant, and the Defendant and Ms. Pirtle had come to the restaurant where the victim worked two to three times together. During these visits, the victim would take a break from work and speak to them outside. The victim acknowledged that he had an argument with Ms. Pirtle prior to the shooting, but he denied assaulting her.

Ms. Chatman confirmed that she was aware of the victim's relationship with Ms. Pirtle, but she stated that he had ended his relationship with Ms. Pirtle on the day before the shooting. Ms. Chatman testified that around 10:00 p.m. on October 16, 2019, she went to the restaurant where the victim worked to wait for him to get off work at 11:00 p.m. Ms. Chatman remained in her car, and the victim came to the car and smoked a cigarette with her before returning to work.

At approximately 10:39 p.m., Ms. Chatman observed the Defendant arrive in the parking lot. He parked near her and exited the car to lean against the building and smoke a cigarette. Ms. Chatman stated that it was dark outside and that she could not tell if there was anyone else in the Defendant's vehicle. However, her car lights were on, and she could see the Defendant's face as he smoked. She testified that he looked nervous because he was "smoking a cigarette really hard."

The victim testified that he exited the building around 11:00 p.m. to take the trash to the dumpster and that he saw the Defendant leaning against the wall. The victim said

that it was dark outside but that there was light in the parking lot. The dumpster was surrounded by rock landscaping, and when the victim was putting the trash into the dumpster, he heard a noise from the rocks moving and saw that the Defendant had followed him. He told the Defendant that the restaurant was closed, and the Defendant responded, "[Y]eah, and then the 'N' word." The victim testified that the Defendant then immediately lifted the gun. The victim saw the "flame" from the gun firing and turned. He felt a burning in his back, heard another shot, and felt something "shoo" past his ear. The victim fled into the restaurant.

The victim testified he did not threaten the Defendant or Ms. Pirtle and that he was not armed. He was not sure if the Defendant had a gun while leaning on the building, and he testified that the Defendant was next to the Defendant's car and could possibly have retrieved a gun from the car prior to following him to the dumpster.

Ms. Chatman witnessed the shooting from her car. She testified that when the victim went to the dumpster, the Defendant had returned to his vehicle. She saw the Defendant reverse the vehicle, drive to the dumpster, and park. Ms. Chatman saw someone exit the vehicle and chase the victim, and she saw flashes from the gunfire and heard the shots. She could not see the shooter clearly, but the shooter returned to the car and sped off. Ms. Chatman thought the victim had been shot and began to circle the restaurant trying to find him.

Ms. Fontasia Fingers was the evening manager of the restaurant, and she was inside "counting the safe" and wearing a headset when the shooting occurred. She heard a beep on the headset which she believed was from someone coming around the building, then she heard the victim enter through the front door. Through video surveillance, she saw the victim jump over the counter. The victim told Ms. Fingers that he had been shot. Ms. Fingers called 911 and locked the doors, and emergency personnel removed the victim from the scene by helicopter. She testified she did not see blood but saw a hole in the red shirt the victim was wearing. Ms. Fingers stated that the victim returned to work about a week and a half after the shooting.

Officer Zac White of the Jackson Police Department ("JPD") responded and observed a gunshot wound to the victim's back. He collected the victim's shirt and hat. He testified that there was some blood on the shirt but that there was not a large amount of blood. The victim told Officer White that the Defendant had "mumbled" something but that he could not understand what the Defendant said. The victim recognized the Defendant but could not remember his name. He told Officer White that the Defendant was an acquaintance of Ms. Pirtle.

The victim testified that he was airlifted to the hospital because emergency personnel did not find an exit wound and did not know where the bullet was. He was discharged around 3:00 or 4:00 a.m. with no surgery. The victim testified that the bullet "grazed [him] on this side and just knocked a big chunk of [his] flesh off on this side and went straight out." He stated he had chronic back pain and muscle spasms, that his ability to work was reduced, and that he had a scar. The victim returned to work at the restaurant, as a cook rather than as a closer, for approximately four months after the shooting. Ms. Chatman testified that the victim returned to work approximately three weeks after the shooting and had back pain. She stated that the restaurant later closed due to the pandemic and that the victim was unemployed at the time of trial. The victim's medical records were introduced into evidence. They reflected that the victim was treated for a gunshot wound to the right side of his back, that the wound appeared "superficial," and that he was discharged with instructions for the treatment for an abrasion.

The victim identified the Defendant from a photographic lineup and gave a statement to police on the day after the shooting. He agreed that his statement to police did not include anything about hearing a second shot go past his head, but he testified that he did mention that there was a second shot in his statement. The victim acknowledged that he had a conviction for aggravated burglary in 2014, another aggravated burglary conviction in 2010, and three theft convictions.

Sergeant Robert Groves of the Jackson Police Department testified that, based on the victim's identification, the Defendant was taken into custody the next day and elected to give a statement. Sergeant Groves typed the Defendant's statement, which the Defendant reviewed and signed. The Defendant stated that a friend of his had told him that the victim had assaulted her, and he went to the victim's work to "confront" the victim about the assault. He had smoked marijuana prior to arriving. According to the Defendant, a friend was driving his car. The Defendant got out of the car to smoke and saw the victim walk past. The Defendant stated, "The way he looked at me made me mad and I went to my car and got my .38 revolver." The Defendant then "walked up on him and he ran." The Defendant stated that he "wasn't trying to kill" the victim but "just wanted to scare him." According to the Defendant's statement, he fired twice at the ground, then left. He dropped off his friend and threw the gun into a wooded area.

Sergeant Groves agreed that the Defendant consented to give a statement and consented to a search of his car. Sergeant Groves attempted to locate the gun, but the Defendant was only able to give general directions, and Sergeant Groves did not find the weapon. Sergeant Groves did not find any bullets at the scene of the shooting. He was not aware of a projectile and cell phone recovered from the parking lot.

- 4 -

In closing argument, the prosecutor referred back to voir dire and noted, "there's a lot at stake here both for the [D]efendant, the victim and our community." He went on to state that if the jury found that "[the Defendant] is guilty of breaking our laws of making our community unsafe of attempting to take the life of another human being," then the jury should forget the victim's "flaws" because "[n]o one, whatever their past may be, deserves to die in a … parking lot." The prosecutor told the jury, "[O]n behalf of the State of Tennessee, on behalf of this community and on behalf of the victim, you must reach the only verdict that truth and justice dictate." The defense did not object to these comments, but argued in closing that the court would instruct the jury not to be swayed by sympathy or emotion. Defense counsel observed, "This notion of it's your job to protect our community [—] is not what your job is." Counsel argued, "The police's job is to protect the community…. Your job is to decide this case using logic…." Defense counsel argued that the Defendant's actions were not consistent with those of someone who desired the death of the victim in that he abandoned the attack after firing and in that he cooperated with police. The prosecutor's response acknowledged that "like [defense counsel] said," the jury should not convict based on "bias, prejudice, passion or sympathy, but because of the facts and because of the law."

The trial court gave the following instructions on attempted first degree murder:

> For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the existence of the following essential elements:
>
> (1) that the defendant unlawfully attempted to kill the alleged victim, Darvius Chatman;
> and
>
> (2) that the defendant acted intentionally. A person acts intentionally when it is the person's conscious objective or desire to cause the death of the alleged victim[1];
> and
>
> (3) that the attempted killing was premeditated.

The trial court defined "intentionally" and "premeditation" for the jury. The instructions for attempted second degree murder informed the jury:

---

[1] The transcript reflects that the trial court read this sentence with the other definitions after giving the third element of the offense.

For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the existence of the following essential elements:

(1) that the defendant unlawfully attempted to kill the alleged victim, Darvius Chatman;
and

(2) that the defendant acted knowingly.

"Knowingly" means that a person acts with an awareness that his conduct is reasonably certain to cause the death of the alleged victim. The requirement of "knowingly" is also established if it is shown that the defendant acted intentionally.

"Intentionally" means that a person acts intentionally when it is the person's conscious objective or desire to cause the death of the alleged victim.

The trial court then defined attempted voluntary manslaughter, using the same definition as for attempted second degree murder but adding the requirements of a state of passion arising from adequate provocation. The trial court instructed on aggravated assault, assault, and employing a firearm during the commission of or attempt to commit a dangerous felony, with the dangerous felony being identified as attempted first degree murder, attempted second degree murder, or attempted voluntary manslaughter.

The jury found the Defendant guilty of attempted second degree murder as a lesser included offense of attempted first degree murder, aggravated assault, and employing a firearm during the commission of or attempt to commit the dangerous felony of attempted second degree murder. The trial court held a sentencing hearing in which it applied as enhancement that the Defendant had a history of criminal behavior beyond that necessary to establish the range and that he committed offenses while a juvenile which would have been felony offenses for an adult. T.C.A. § 40-35-114(1), (16). The court sentenced the Defendant to twelve years for attempted second degree murder, six years for aggravated assault, and the statutorily required six years with a one hundred percent release eligibility for the firearms offense. The aggravated assault conviction was merged with the attempted second degree murder conviction, and the firearms offense was to be served consecutively by statute for an effective eighteen-year sentence.

The Defendant moved for a new trial, raising the sufficiency of the evidence, asserting error in sentencing, and asserting that the prosecutor committed misconduct by

asking the jury to consider the safety of the community in closing argument. Acknowledging that he had not objected to closing argument, the Defendant requested plain error relief. The trial court noted the strong proof of guilt, including the Defendant's identification by two witnesses and the Defendant's statement acknowledging that he had fired the shots. The court observed that it did not have a transcript of the trial, concluded that the objection to closing argument had been waived, and determined that even if the closing argument had been improper, there was no prejudice based on the strong proof at trial. The Defendant appeals.

## ANALYSIS

On appeal, the Defendant renews his objection to the sufficiency of the evidence and the prosecutor's closing argument. He also raises as error for the first time the omission from the jury instructions of the statutory definition of attempt. Because we conclude that the jury was improperly instructed, we reverse the convictions for attempted second degree murder and employment of a firearm in the commission of attempted second degree murder, and we remand for further proceedings.

### I. Sufficiency of the Evidence

The Defendant asserts that the evidence was insufficient to support the conviction for attempted second degree murder because the State did not introduce sufficient proof to establish that he was acting with the requisite intent. The State responds that there was sufficient evidence to allow the jury to infer that the Defendant acted with the requisite intent.

This court must set aside a finding of guilt if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt. Tenn. R. App. P. 13(e). The question before the appellate court is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Pope*, 427 S.W.3d 363, 368 (Tenn. 2013). This court will not reweigh or reevaluate the evidence, and it may not substitute its inferences drawn from circumstantial evidence for those drawn by the trier of fact. *State v. Smith*, 436 S.W.3d 751, 764 (Tenn. 2014). The jury's guilty verdict, approved by the trial judge, accredits the State's witnesses and resolves all conflicts in favor of the prosecution. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). The trier of fact is entrusted with determinations concerning witness credibility, factual findings, and the weight and value of evidence. *Smith*, 436 S.W.3d at 764. In reviewing the sufficiency of the evidence, we afford the State the strongest legitimate view of the evidence and all reasonable inferences that can be drawn from the evidence. *State v. Hawkins*, 406 S.W.3d 121, 131 (Tenn. 2013). "A verdict of guilt removes the

presumption of innocence and replaces it with a presumption of guilt, and on appeal the defendant has the burden of illustrating why the evidence is insufficient to support the verdict rendered by the jury." *Reid*, 91 S.W.3d at 277. "Circumstantial evidence alone is sufficient to support a conviction, and the circumstantial evidence need not exclude every reasonable hypothesis except that of guilt." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012).

To establish that the Defendant committed attempted second degree murder as charged, the State had to show that the Defendant acted with the intent to cause a result that would constitute the offense of second degree murder, under the circumstances surrounding the conduct as the Defendant believed them to be, and that the conduct constituted a substantial step toward the commission of the offense. T.C.A. § 39-12-101(a)(3). To constitute a substantial step, the Defendant's entire course of action had to be shown as corroborative of the intent to commit the offense. T.C.A. § 39-12-101(b). Second degree murder is a knowing killing of another. T.C.A. § 39-13-210(a)(1). A person acts intentionally "when it is the person's conscious objective or desire" to cause the result. T.C.A. § 39-11-302(a). A "person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." T.C.A. § 39-11-302(b).

The Defendant argues that the State failed to introduce proof regarding his intent. Whether the State has established the requisite mens rea is a question of fact reserved for the jury's determination. *State v. Davis*, 466 S.W.3d 49, 69 (Tenn. 2015). "Intent, which can seldom be proven by direct evidence, may be deduced or inferred by the trier of fact from the character of the assault, the nature of the act and from all the circumstances of the case in evidence." *State v. Inlow*, 52 S.W.3d 101, 105 (Tenn. Crim. App. 2000) (concluding that there was sufficient evidence of intent to support an attempted second degree murder conviction when the defendant and victim were in a feud, the defendant made threats, and the defendant stabbed the unarmed victim during a fight); *see State v. Brown*, 311 S.W.3d 422, 432 (Tenn. 2010).

Here, the evidence at trial established that the Defendant was angered by the victim's treatment of Ms. Pirtle, brought a gun to the victim's place of work, waited for the victim outside, followed him to the dumpster, and then fired his weapon twice, hitting the victim in the back once. While the Defendant claimed that he was firing at the ground and did not intend to hit the victim, a defendant's self-serving declaration of his or her intent is only one factor for the jury to consider, and the Defendant's actions and the circumstances of the crime are also evidence of intent. *See State v. Holland*, 860 S.W.2d 53, 59 (Tenn. Crim. App. 1993). The evidence established that a bullet struck the victim in the back as he was attempting to flee. In the light most favorable to the State, the victim's testimony established that a second shot nearly struck his head, and Ms.

Chatman and the Defendant agreed that a second shot was fired. The circumstances of the shooting, including the procurement of a weapon, the lying in wait, and the firing of multiple shots at the fleeing and unarmed victim, were sufficient to allow a rational trier of fact to infer that the Defendant acted with the intent to commit second degree murder and took a substantial step toward committing the offense. *See State v. Brandon Scott Donaldson*, No. E2016-00262-CCA-R3-CD, 2017 WL 2875722, at *18 (Tenn. Crim. App. July 6, 2017) (the defendant's act of firing eleven gunshots at a vehicle containing the victims was sufficient to establish his intent to commit attempted second degree murder); *State v. Johnny Frank Royston, Sr.*, No. E2014-00018-CCA-R3-CD, 2015 WL 159813, at *9 (Tenn. Crim. App. Jan. 13, 2015) (evidence that the defendant drugged the victim and choked her to the extent that she received eye injuries, lost her voice, and had rope marks on her neck, was sufficient to support a conclusion that the defendant acted with the intent to commit a knowing killing and took a substantial step toward completing the crime). Although the Defendant argues that the minor nature of the injury shows that the Defendant did not intend to kill the victim, a rational trier of fact could have found that the victim survived because of the Defendant's poor marksmanship and not due to a lack of intent. *See State v. Elder*, 982 S.W.2d 871, 875 (Tenn. Crim. App. 1998). We conclude that the evidence is sufficient.

The Defendant does not contest the sufficiency of the evidence underlying the aggravated assault or weapons offenses, and we conclude that the evidence is sufficient to allow the jury to conclude that the Defendant intentionally or knowingly caused bodily injury to the victim by the use of a deadly weapon and that he employed a firearm during the commission of or attempt to commit the dangerous felony of attempted second degree murder. T.C.A. §§ 39-13-101(a)(1), 39-13-102(a)(1)(A)(iii), 39-17-1324(b), (i)(1)(B). Accordingly, the evidence is sufficient to support the Defendant's convictions.

## II. Failure to Instruct on Attempt

On appeal, the Defendant asserts that his conviction for attempted second degree murder should be reversed because the trial court committed plain error in not instructing the jury on the statutory elements of attempt. The State responds that plain error has not been established. We conclude that the failure to instruct on an essential and disputed element of the offense requires reversal.

The United States Constitution and Tennessee Constitution guarantee criminal defendants the right to trial by jury. U.S. Const. amend. VI; Tenn. Const. art. I, § 6. This right includes the right to a correct and complete charge of the law. *State v. Cole-Pugh*, 588 S.W.3d 254, 260 (Tenn. 2019). The trial court must "instruct the jury on the general principles of law applicable to the facts of the case," which includes defining every element of the offense charged. *State v. Clark*, 452 S.W.3d 268, 294-95 (Tenn. 2014).

"'[T]he defendant has a right to have every issue of fact raised by the evidence and material to his defense submitted to the jury upon proper instructions by the judge.'" *Cole-Pugh*, 588 S.W.3d at 260 (quoting *State v. Sims*, 45 S.W.3d 1, 9 (Tenn. 2001)).

We note that the indictment specified that the Defendant was being charged with having taken a substantial step in furtherance of the commission of first degree murder by shooting at the victim.[2] *See* T.C.A. § 39-12-101(a)(3). Subsection -101(a)(3) sets out the requirements for attempt as charged here:

> (a) A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:
>
> …
> (3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.
> (b) Conduct does not constitute a substantial step under subdivision (a)(3), unless the person's entire course of action is corroborative of the intent to commit the offense.

T.C.A. § 39-12-101. The jury was not instructed on the statutory requirements to establish attempt as necessary for the conviction for attempted second degree murder.

Initially, we address the standard of review. The parties agree that this issue was waived and should be reviewed for plain error because the Defendant did not object to the instructions or raise the issue in his motion for a new trial. "As part of their instructions in criminal cases, trial courts must describe and define each element of the offense or offenses charged." *Clark*, 452 S.W.3d at 295. "Whether requested or not," the essential elements of the offenses charged should be submitted to the jury. *State v. Brewer*, 932 S.W.2d 1, 16 (Tenn. Crim. App. 1996). "An erroneous or inaccurate jury charge, as opposed to an incomplete jury charge, may be raised for the first time in a motion for a new trial and is not waived by the failure to make a contemporaneous objection." *State v. Faulkner*, 154 S.W.3d 48, 58 (Tenn. 2005) "An instruction should be considered prejudicially erroneous only if the jury charge, when read as a whole, fails to fairly submit the legal issues or misleads the jury as to the applicable law." *Id.*; *see State v. Dylan Brewer*, No. W2017-01725-CCA-R3-CD, 2019 WL 1109917, at *4 (Tenn. Crim. App. Mar. 11, 2019) (concluding that the omission of mens rea instructions was not waived by failure to object at trial). Accordingly, the Defendant's failure to object at

---

[2] The parties focus on attempt as defined in Tennessee Code Annotated section 39-12-101(a)(2).

trial did not waive the issue. However, when such an issue is not raised in a motion for a new trial, it is reviewed for plain error only. *Faulkner*, 154 S.W.3d at 58; *Dylan Brewer*, 2019 WL 1109917, at *4 (concluding that although the omission of a mens rea instruction was not waived for failure to object, it was waived by failure to raise the issue in the motion for a new trial). We agree with the parties that the Defendant waived the issue by failing to include it in his motion for a new trial. *See Faulkner*, 154 S.W.3d at 58.

While not every erroneous instruction "rises to the level of constitutional error," "[t]he failure to instruct the jury on a material element of an offense," constitutes constitutional error subject to harmless error analysis. *Faulkner*, 154 S.W.3d at 60 (concluding that error in including surplusage regarding nature-of-conduct language was not constitutional error). A jury instruction which misstates or omits an element of an offense so as to lessen the State's burden of proof amounts to constitutional error. *State v. Page*, 81 S.W.3d 781, 789 (Tenn. Crim. App. 2002). Due process requires the conviction to rest upon a jury determination that the defendant is beyond a reasonable doubt guilty of every element of the crime. *State v. Ducker*, 27 S.W.3d 889, 899 (Tenn. 2000). When the charge omitted is essential to a fair trial, the failure to raise the issue below does not preclude relief. *State v. Teel*, 793 S.W.2d 236, 249-50 (Tenn. 1990). Such non-structural constitutional error places the burden on the State to prove harmlessness beyond a reasonable doubt. *State v. Rodriguez*, 254 S.W.3d 361, 371 (Tenn. 2008). In *State v. Minor*, the Tennessee Supreme Court noted that a defendant who had preserved an allegation of nonstructural constitutional error would have the burden of persuading the court that error had occurred and that the State would then bear the burden of establishing harmlessness beyond a reasonable doubt. 546 S.W.3d 59, 67 (Tenn. 2018). Because the defendant in *Minor* had failed to preserve the error, the Tennessee Supreme Court conducted an analysis under the plain error doctrine. *Id.* at 70-75.

For an error to constitute plain error sufficient to merit relief, the following factors must be present: 1) the record must clearly establish what occurred in the trial court; 2) a clear and unequivocal rule of law must have been breached; 3) a substantial right of the accused must have been adversely affected; 4) the accused did not waive the issue for tactical reasons; and 5) consideration of the error is necessary to do substantial justice. *Minor*, 546 S.W.3d at 67; *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994). Additionally, "'the plain error must be of such a great magnitude that it probably changed the outcome'" of the proceeding. *State v. Bishop*, 431 S.W.3d 22, 44 (Tenn. 2014) (quoting *Adkisson*, 899 S.W.2d at 642). When reviewing for plain error, we keep in mind that "[a] 'substantial right' is a right of 'fundamental proportions in the indictment process, *a right to the proof of every element of the offense*, and is constitutional in nature.'" *Adkisson*, 899 S.W.2d at 639 (quoting *State v. David L.*

*Hassell*, No. 02C01-9202-CR-00038, 1992 WL 386311, at *6 (Tenn. Crim. App. Dec. 30, 1992), *abrogated on other grounds by State v. Jackson*, 173 S.W.3d 401, 407 n.3 (Tenn. 2005)) (emphasis added).

Here, the record clearly establishes that the instructions regarding attempt were omitted, and it does not appear that there was any tactical reason to waive the instructions on attempt. We consider whether a clear and unequivocal rule of law was breached. The State argues that the word "attempt" is "in common usage" and that the instructions accordingly adequately defined the offense. *See State v. Michael Wayne Perry*, No. M1999-01832-CCA-R3-CD, 2001 WL 334302, at *2, 13-14 (Tenn. Crim. App. Apr. 6, 2001) (summarizing the State's argument that the public's understanding of "attempt" was the same as the legal definition). However, "[t]he words defining the offense … have a technical meaning and it is the trial court's duty to give such meaning to the jury in the charge…." *Teel*, 793 S.W.2d at 249 (concluding that it was error to omit the statutory definition of rape from the offense of felony murder where the underlying felony was rape, but determining that the error was harmless beyond a reasonable doubt when the same jury was correctly instructed and found the elements of rape in connection with an aggravating circumstance). The offense, as charged here, required the State to prove that the Defendant acted with the intent to cause the result of second degree murder, that his conduct constituted a substantial step toward the commission of the offense, and that his entire course of action was corroborative of the intent to commit the offense. Intent requires showing that the act was the person's conscious objective or desire. We reject the State's contention that the common understanding of "attempt" was sufficient to establish these elements, which were contested at trial. Instead, we conclude that the omission of the statutory elements of attempt was error and that a clear and unequivocal rule of law was breached.

The State cites to *State v. Larry Charles Hefner, Jr.*, in which the Defendant was convicted of committing burglary by entering a building without the owner's consent and attempting to commit a theft, and the trial court failed to define "attempt," "intentionally," and "recklessly." No. E2018-01164-CCA-R3-CD, 2019 WL 2763007, at *9 (Tenn. Crim. App. July 2, 2019), *perm. app. denied* (Tenn. Mar. 26, 2020). The *Larry Charles Hefner, Jr.,* court determined there was no plain error because the overwhelming evidence that the Defendant had stuffed five pairs of scrubs down his pants and attempted to leave the store precluded a favorable finding on three of the factors necessary to establish plain error. *Id.* The State likewise cites to *State v. Michael Wayne Perry*, where this court concluded that the failure to define "attempt" for the underlying felony of rape in a felony murder was harmless in a case where the proof included evidence that the victim's clothing was forcibly removed and the defendant confessed that he killed the victim after she refused sexual intercourse and that he "'did stuff'" to her and "thought he had raped her." No. M1999-01832-CCA-R3-CD, 2001 WL 334302, at *2, 13-14 (Tenn.

Crim. App. Apr. 6, 2001). These cases do not stand for the proposition, however, that the trial court need not instruct on the statutory definition of "attempt" or that a commonsense, layman's understanding of "attempt" is sufficient to establish the offense, but instead are based on a harmless error analysis premised on the overwhelming nature of the proof.

In this case, an essential element of the offense was omitted from the jury instructions and was contested at trial, and the case is accordingly distinguishable from *Larry Charles Hefner, Jr.,* and *Michael Wayne Perry*. The Defendant was entitled to an instruction informing the jury of the elements of attempt, but the jury instructions did not include the elements of attempt. Furthermore, the jury was told that it only had to find that the Defendant acted "knowingly," that is, with an awareness that his conduct is reasonably certain to cause the result, rather than "intentionally," or with the conscious objective or desire to cause the result. *See* T.C.A. § 39-11-302(a), (b). The Defendant essentially conceded at trial that he went to the victim's place of work and fired shots. The only disputed fact was whether the Defendant acted with the intent to harm the victim or was, as he told police, merely attempting to frighten the victim by discharging the gun in his vicinity. *See Dylan Brewer*, 2019 WL 1109917, at *6-7 (reversing the defendant's conviction when the definitions of "intentionally" and "knowingly" were omitted from the oral jury instructions and "intent was the primary issue at trial").

The jury was not instructed on the elements necessary to establish attempt as it was charged in the indictment. Further, the jury was instructed that the conviction offense required only a finding that the Defendant acted "knowingly," although the elements of attempt require the State to show that the Defendant acted "with intent." *See id.* at *7 (noting that "the failure to provide a definition of the *mens rea* is not harmless, especially when the defendant's mental state is a 'hotly contested issue'" (quoting *State v. Robert F. Smythers*, No. E2001-02806-CCA-R3-CD, 2003 WL 21145428, at *18-19 (Tenn. Crim. App. May 19, 2003)). We note parenthetically that the jury acquitted the Defendant of attempted first degree murder, which required a finding of intentional conduct and premeditation.

Accordingly, the omission had the effect not only of lowering the State's burden of proof but of omitting instructions pertinent to the one contested issue at trial. *See Page*, 81 S.W.3d at 789-90 (concluding that an error in instructing the jury on nature-of-conduct rather than result-of-conduct language was not harmless beyond a reasonable doubt when "the *mens rea* of the defendant was indeed *the* disputed issue at trial"). We conclude that consideration of the error is necessary to do substantial justice and that the error affected a "substantial right" of the Defendant, namely the "'right to the proof of every element of the offense.'" *Adkisson*, 899 S.W.2d at 639 (quoting *David L. Hassell*, 1992 WL 386311, at *6); *see State v. Keith T. Dupree*, No. W1999-01019-CCA-R3-CD,

2001 WL 91794, at *4-5 (Tenn. Crim. App. Jan. 30, 2001) (concluding that omitting the result-of-conduct definition of "knowingly" was reversible error when the sole issue at trial was whether the defendant was aware that his conduct was reasonably certain to cause the result). We conclude that the conviction for attempted second degree murder must be reversed and the cause remanded for further proceedings. Although the Defendant does not address the effect of the instructions on the firearms conviction, we conclude that, because it was premised on the employment of a weapon during the course of attempted second degree murder and because the jury was incorrectly instructed on the elements of attempted second degree murder, the firearms conviction must likewise be reversed. In the event of further appellate review, we address the Defendant's remaining issue.

### III. Prosecutorial Misconduct

The Defendant asserts that the prosecutor committed misconduct by any references to the "community" in closing argument. The State asserts that this argument is waived, that there was no plain error, and that any impropriety did not affect the verdict. The Defendant counters that, although he did not make a contemporaneous objection, he is entitled to plenary review under *State v. Hawkins*, 519 S.W.3d 1, 48 (Tenn. 2017), because he raised the issue in the motion for a new trial. We conclude that regardless of whether we apply plain error or plenary review, the Defendant is not entitled to reversal of the convictions on this ground.

Courts generally apply plain error review when the defense has failed to object to the contents of the prosecutor's argument. *See State v. Jordan*, 325 S.W.3d 1, 58 (Tenn. 2010) (reviewing closing argument for plain error when the defendant did not contemporaneously object); *State v. Larkin*, 443 S.W.3d 751, 813 (Tenn. Crim. App. 2013). However, in *Hawkins*, a death penalty case, the defendant raised four instances of alleged misconduct in closing statements, none of which drew a contemporaneous objection and only two of which were raised in the motion for a new trial. *Hawkins*, 519 S.W.3d at 48. The Tennessee Supreme Court applied plenary review to the two issues raised in the motion for a new trial, one of which had been the subject of a previous motion in limine. *Id.* We note that one of the prosecutor's statements which received plenary review violated the trial court's pretrial ruling that the prosecutor should not use the term "rape" when referring to an offense not charged in the case. *Id.*; *see also State v. Zackary James Earl Ponder*, No. M2018-00998-CCA-R3-CD, 2019 WL 3944008, at *11 (Tenn. Crim. App. Aug. 21, 2019) (applying plenary review to a statement in a closing argument that violated a pretrial ruling but was not objected to at the time it was made). Whether the appellant is entitled to plenary or only plain error review of improper argument which was not objected to but was preserved in a motion for a new trial is an issue currently before the Tennessee Supreme Court. *See State v. Tyler Ward Enix*, No.

E2020-00231-CCA-R3-CD, 2021 WL 2138928, at *15 (Tenn. Crim. App. May 26, 2021), *perm. app. granted* (Tenn. Oct. 13, 2021) (order).

We conclude that, whether we apply plain error or plenary review, the Defendant is not entitled to relief. *See State v. Martell Smith*, No. M2019-01575-CCA-R3-CD, 2020 WL 6603467, at *7 (Tenn. Crim. App. Nov. 12, 2020), *perm. app. denied* (Tenn. Mar. 17, 2021) (concluding that the defendant was not entitled to relief regardless of whether plain error or plenary review was applied to the statements from closing argument); *State v. Charvaris Donte Newsom*, No. M2020-00681-CCA-R3-CD, 2021 WL 1753409, at *19 (Tenn. Crim. App. May 4, 2021), *perm. app. denied* (Tenn. Sept. 22, 2021). Generally, plain error requires a showing that consideration of the error is necessary to do substantial justice. *Adkisson*, 899 S.W.2d at 642. Additionally, "'the plain error must be of such a great magnitude that it probably changed the outcome of the trial.'" *Bishop*, 431 S.W.3d at 44 (quoting *Adkisson*, 899 S.W.2d at 642). Likewise, in reviewing impropriety in closing argument, this court must evaluate the error to determine whether the conduct affected the verdict to the defendant's prejudice. *State v. Bane*, 57 S.W.3d 411, 425 (Tenn. 2001). The court considers: 1) the conduct complained of viewed in context and in light of the facts and circumstances of the case; 2) the curative measures undertaken by the court and the prosecution; 3) the prosecutor's intent in making the improper statement; 4) the cumulative effect of the improper conduct and any other errors in the record; and 5) the relative strength or weakness of the case. *Larkin*, 443 S.W.3d at 813. "A criminal conviction should not be lightly overturned solely on the basis of the prosecutor's closing argument." *State v. Banks*, 271 S.W.3d 90, 131 (Tenn. 2008).

The Defendant notes that "community conscience arguments are generally improper." *State v. Thomas*, 158 S.W.3d 361, 414 (Tenn. 2005) (appendix), *abrogated on other grounds by State v. Urshawn Eric Miller*, No. W2019-00197-SC-DD-TDD, 2021 WL 5810574 (Tenn. Dec. 7, 2021). He cites to the prosecutor's references to the community, including: the prosecutor's statement that "there's a lot at stake here both for the [D]efendant, the victim and our community"; the prosecutor's reference to the jury's responsibility to determine if "[the Defendant] is guilty of breaking our laws[,] of making our community unsafe[,] of attempting to take the life of another human being"; and the prosecutor's statement that "on behalf of the State of Tennessee, on behalf of this community and on behalf of the victim, you must reach the only verdict that truth and justice dictate." While there was no objection to these statements, defense counsel attempted to argue the impropriety of any consideration of community conscience to the jury, noting that they would be instructed to disregard sympathy and emotion. Defense counsel observed, "This notion of it's your job to protect our community [—] is not what your job is." He elaborated, "The police's job is to protect the community…. Your job is to decide this case using logic…." When the prosecutor was given a chance to respond, he acknowledged that "like [defense counsel] said," the jury should not convict based on

- 15 -

bias, prejudice, passion, or sympathy "but because of the facts and because of the law." We note that the proof in this case was particularly strong, in that the Defendant acknowledged going to the victim's workplace while armed, waiting for the victim, and firing two shots, one of which struck the victim in the back. The allegedly improper arguments did not concern any disputed issue at trial. We conclude that the Defendant cannot show that any impropriety in the prosecutor's closing statements was of such great magnitude that it probably changed the outcome of the trial or that the statements affected the verdict to his prejudice. *Bishop*, 431 S.W.3d at 44; *Bane*, 57 S.W.3d at 425. Particularly in view of the curative measures undertaken by the prosecution in acknowledging that defense counsel was correct that the jury should not allow bias, prejudice, passion, or sympathy to affect the verdict but should determine guilt based on the law, and also in light of the overwhelming evidence that the Defendant shot the victim, we conclude that the Defendant is not entitled to reversal of the convictions based on any error in presenting a community conscience argument.

## CONCLUSION

Based on the foregoing reasoning, the Defendant's convictions for attempted second degree murder and employment of a firearm during attempted second degree murder are reversed, and the case is remanded for further proceedings. The conviction for aggravated assault is affirmed.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE